**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| C.I.T.C., U.S.A., | CASE NO. 1:12-cv-07283 |
| Plaintiff, | Judge: |
| v. | Magistrate Judge: |
| GRAY LION LOGISTICS, LLC | **COMPLAINT** |
| Defendant. | **JURY TRIAL DEMANDED** |

Plaintiff, C.I.T.C., U.S.A., by and through its undersigned counsel, hereby files this Complaint requesting damages and injunctive relief, and alleges as follows:

## NATURE OF THE CASE

1. Plaintiff files this action for breach of contract and negligence against Defendant, as a consequence of Defendant's failure to exercise the standard of care required contractually and under Illinois law regarding negligence relating to its handling of a bulldozer that Plaintiff retained Defendant to ship from Puerto Rico to western Africa. Defendant failed to properly maintain and safeguard the bulldozer while in its possession. That failure has caused the functional destruction of the bulldozer, valued at over $550,000, and the loss of sales revenue that Plaintiff would have otherwise realized had Defendant complied with its obligations. Plaintiff seeks to recover its damages and other relief against Defendant.

## THE PARTIES

2. Plaintiff C.I.T.C. USA ("CITC") is a Colorado corporation with a principal place of business at 129 Fairfield Way, Suite 102, Bloomingdale, IL 60108. Plaintiff is in

the business of supplying materials for industrial, electrical, safety and mining applications. It specializes in the procurement and distribution of industrial supplies to manufacturers in several industrial carriers

3. Defendant GRAY LION LOGISTICS, LLC ("Gray Lion") is a Florida limited liability company with a principal place of business at 9485 Regency Square Boulevard, Suite 415, Jacksonville, Florida 32068. Gray Lion is a logistics company that specializes in shipping heavy equipment from the United States worldwide. Gray Lion, at times relevant hereto, formerly transacted business under the name International Transport Logistics

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is properly founded in this judicial district pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events giving rise to the claims in this action occurred within this District.

## FACTS COMMON TO ALL COUNTS

6. In or about May 2011, RUSAL, a company doing business in the West African nation of Guinea, issued a purchase order to CITC for the purchase of a bulldozer.

7. CITC accepted RUSAL's offer contained in that purchase order. CITC then located and procured a pre-owned model year 2001 D10R bulldozer ("Bulldozer") to sell to RUSAL.

2

8.      The Bulldozer that CITC procured for sale to RUSAL was a used, 2001 model Caterpillar model D10R the value of which, at all times relevant hereto and upon information and belief, exceeded $550,000.

9.      In or about July 2011, CITC contacted Gray Lion to arrange for the transport of the Bulldozer to Guniea.

10.     On or about July 2011, Gray Lion offered to CITC that it would shop the Bulldozer from its then-current location in San Juan, Puerto Rico, to Guinea, at a shipping price of $26,425, and that it would ship the Bulldozer to Guinea in July 2011.  CITC accepted that offer and Gray Lion with instructions relating to the shipment of the Bulldozer.

11.     CITC informed Gray Lion in or about July 2011 that the Bulldozer was then physically present in San Juan, Puerto Rico, and CITC desired to have Gray Lion transport it to Conakry, Guinea.

12.     On or about July 5, 2011, before the Bulldozer was shipped, an employee of CITC, Nelson Radison, inspected it and found that the Bulldozer was in good overall mechanical condition.  Furthermore, Radison found that the performance and physical appearance of the Bulldozer was in accordance with what RUSAL specified for the Bulldozer it sought to purchase.

13.     On or about July 29, 2011, Gray Lion took possession and control of the Bulldozer in San Juan, Puerto Rico, and loaded it onto a vessel in order to begin transporting it.  Gray Lion then proceeded to ship the Bulldozer was shipped from San Juan, Puerto Rico to Jacksonville, Florida

14.     On or about August 2, 2011, the Bulldozer arrived in Jacksonville, Florida, where Gray Lion unloaded and parked it in or near the port of Jacksonville, for transfer to another vessel.

15.     Once the Bulldozer was shipped to Jacksonville, Florida, Gray Lion initially refused inspection of the Bulldozer.  The Bulldozer was subsequently inspected by a company named Bureau Veritas, which Gray Lion had hired to inspect all goods before they were shipped to Guinea.

16.     After inspection, Bureau Veritas personnel confirmed that the Bulldozer was good mechanical and aesthetic condition, and observed the Bulldozer being driven onto a flatbed trailer for shipment to Guinea.

17.     Despite unloading it on or about August 2, 2011, Gray Lion left the Bulldozer at the Port of Jacksonville until approximately October 9, 2011.  By leaving the Bulldozer there for that amount of time, Gray Lion violated the terms of the Contract between it and CITC to timely ship the Bulldozer to Guinea.

18.     The Bulldozer arrived in Dakar, Senegal or about October 27, 2011. Shipping records show that, upon arrival in Dakar, an operator had difficulty starting the Bulldozer.  Work was subsequently performed on the Bulldozer, and approximately two weeks later the Bulldozer was loaded onto another vessel and shipped to Conakry on November 17, 2011.

19.     The Bulldozer arrived in Conakry on November 23, 2011.  It was unloated onto port and inspected by GETMA-AMA ("GETMA"), a clearing agency based in Guniea.

4

20.     On or about January 2, 2012, CITC was notified that the Bulldozer, upon delivery, was not in a working condition.  Among other things, CITC was notified that the Bulldozer did not have an engine battery or fuel, and that it was missing a cylinder.

21.     When the Bulldozer left CITC's control, the Bulldozer was in full working condition.  Among other things, when the Bulldozer left CITC's control, the Bulldozer had an engine battery, fuel in its tank and contained all of its cylinders.

## COUNT I
### (Breach of Contract)

22.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

23.     In its contract with Plaintiff, Defendant agreed to promptly deliver the Bulldozer to its destination.

24.     Defendant failed to promptly deliver the Bulldozer.  Instead, it allowed the bulldozer to remain at the port of Jacksonville, Florida for a period of over two (2) months before it shipped the Bulldozer from Jacksonville to Dakar.

25.     Defendant never advised Plaintiff until October 2011 that it had delayed shipment of the Bulldozer for over two months.  Defendant did not offer any reason for its failure to promptly ship the Bulldozer as it was required by contract to do.

26.     As a result of Defendant's unjustified delay in promptly shipping the Bulldozer, the Bulldozer was not delivered to RUSAL on time as required in the agreement between RUSAL and Plaintiff.

27.     As a result of Defendant's breach of its agreement with Plaintiff, Plaintiff suffered damages by being unable to perform its obligations under its contracts with RUSAL.

28.     Plaintiff performed all of its obligations under its contract with Defendant.

29.     As the result of the delay, RUSAL froze all accounts receivables that belonged to CITC, which resulted in the loss of well over $660,000 Plaintiff.

## COUNT II
### (Negligence)

30.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

31.     CITC advised Defendant that its leading business partner, RUSAL, expected the speedy delivery of the Bulldozer.

32.     Defendant advised Plaintiff that it would ship the Bulldozer in a timely fashion.

33.     Defendant did not take any steps to prevent the unreasonable delay in shipment, and as a result through its severe negligence directly caused CITC to suffer irreparable economic hardship, as well as a loss of valuable business partnership.

34.     Defendant had a duty to Plaintiff to exercise a reasonable level of care while the Bulldozer was in its possession.

35.     International knew, or through the exercise of reasonable diligence should have known, that the Bulldozer would be parked or situated in outdoor settings, fully exposed to the elements of weather and atmosphere, during the course of its shipment.

36.     Defendant failed to exercise a reasonable level of care to avoid damage to the bulldozer during shipment.  As a direct result of Defendant's actions and omissions, the Bulldozer was left exposed to subject to severe inclement weather, ultimately resulting in the total corrosion of its exterior and parts of its interior, while in Defendant's possession.

37.     The damages caused to the Bulldozer were reasonably foreseeable to Defendant.

38.     The corrosion and overall deterioration of the Bulldozer's condition caused RUSAL to rescind its contract with CITC.

39.     As the result of the delay, RUSAL froze all accounts receivables that belonged to CITC, which resulted in the loss of well over $660,000 Plaintiff.

40.     Further, as the result of RUSAL's actions, CITC was unable to use the said funds to further invest in its growing business, resulting in catastrophic losses to its income and potential business dealings.

41.     Defendant's negligence directly caused CITC the loss of its primary business relationship, which had been with RUSAL.

42.     Defendant at all times knew that it could not ship the Bulldozer on a timely basis, and failed to notify or advise CITC of the substantial delay.

43.     Defendant's actions directly led to the severe damages suffered by CITC through no fault of its own, through the loss of its major business partner.

44.     The harm resulting from Defendant's acts and omissions in connection with the Bulldozer were reasonably foreseeable to Defendant.

## JURY DEMAND

45.     Plaintiff hereby demands a jury trial in this case.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests Judgment and relief against Defendant and in favor of Plaintiff on all counts herein; award damages to Plaintiff in excess of $1 million; attorney fees to the extent recoverable; court costs and expenses; and any and all further relief that this Court deems to be reasonable and appropriate under the circumstances.

*[Intentionally left blank]*

Respectfully submitted,

C.I.T.C., U.S.A.,

**DATED:**  September 12, 2012

By: _____/s/ Paul Duffy_____
            One of its attorneys

Paul Duffy, Esq.
Duffy Law Group
2 N. LaSalle Street, 13th Floor
Chicago, IL  60602
Telephone: (312) 952-6136